In re William Charles FAIR, Debtor.

Von G. MEMORY, Trustee, Plaintiff,

v.

JEFFERSON FEDERAL SAVINGS & LOAN ASSOCIATION, et al., Defendants.

Adv. No. 82–0489.

United States Bankruptcy Court, M.D. Alabama.

Feb. 25, 1983.

Barry Teague, Montgomery, Ala., for plaintiff.

Wayne P. Turner, Montgomery, Ala., for debtor William C. Fair.

Michael B. Beers, Montgomery, Ala., for defendant, L.D. Kichler, Co.

Luther H. Waller, Jr., Montgomery, Ala., for defendant, Grubbs Const., Co.

Edward J. Azar, Montgomery, Ala., for defendant Central Bank of the South.

## OPINION ON MOTION TO AVOID LIENS FILED BY DEBTOR

## OPINION ON MOTION TO AVOID LIENS FILED BY TRUSTEE

RODNEY R. STEELE, Bankruptcy Judge.

In this bankruptcy case, the trustee filed an application on October 4, 1982, to sell debtor's home consisting of a residential house and lot located at 1231 Dalraida Road, Montgomery, Alabama, 36109, free and clear of all liens and encumbrances.

The matter was thereafter set to be heard with notice to all creditors who claimed or had any interest in the property.

When the matter came on for hearing, after several continuances, the attorney for the debtor filed a motion to avoid certain judgment liens against the property. Because the trustee also wished to file such a motion the matter was continued to be taken up at a later time, and the trustee did, on January 11, 1983, file a motion to avoid these same judgment liens.

The matter is now submitted upon briefs on the question of whether such judgment liens may be avoided by the trustee or by the debtors where the debtors have claimed exemption rights in the property as a homestead, and seek to avoid the liens of these judgment creditors.

### FINDINGS

The debtor, William Charles Fair, filed his bankruptcy petition on July 9, 1982. Claudette Fair, his wife, filed on October 4, 1982.

The judgments attacked are as follows:

A) L.D. Kichler Company, a judgment against both debtors for $2,832.42 filed for record on May 12, 1982.

B) William J. Grubbs, Jr., a judgment against both debtors, in the amount of $2,500 filed for record on June 16, 1982.

C) Central Bank of Montgomery, a judgment against both debtors in the amount of $39,542.28, filed for record on July 2, 1982.

D) Central Bank of Montgomery, a judgment against both debtors in the amount of $8,808.08, filed for record on July 2, 1982.

### CONCLUSIONS

■ The filing of a certificate of judgment for recording in the Office of the Judge of Probate of a county in Alabama, constitutes a judicial lien upon the property of the debtors to the extent that such property is subject to levy and execution in Alabama. See Section 6–9–210 and 6–9–211 of the Code of Alabama 1975. See also, *McKay v. Trustco Finance Co.*, 198 F.2d 431, (C.A.5, 1952).

It is asserted by the debtors and by the trustee in this case that these judgments are due to be avoided at the instance of both debtors and the trustee, under Title 11, U.S.Code, Sections 522(f), (g), (h), (i) and (j), and Section 547.

The trustee and the debtors make an additional argument based on Section 6–9–211 of the Code of Alabama, 1975, that the judgments, or some of them, do not even constitute a lien under the law of Alabama, and therefore need not be avoided under this special avoiding power.

To the extent that trustee avoids any liens or encumbrances, such as a judicial lien, under his special avoiding powers (here, Section 547), then the debtors may claim as exempt that amount of property which is exemptable to them under the laws of Alabama. This exemption is available against the trustee from any property recovered or any transfer set aside. (11 U.S.C. Sec. 522(g), (h))

If the trustee does not insist on these rights, then the debtors may insist on the same rights by intervention or otherwise in some separate proceedings. See Title 11, U.S.Code, Sections 522(g), (h), (i) and (j).

### SECTION 547 ATTACK

■ We take up first the attack raised by trustee and the debtors, utilizing Section 547 of the Bankruptcy Code. That section permits trustee (and debtors to the extent of their interest) to set aside any transfer which occurred within a 90-day period and which occurred while the debtor, during that 90-day period is presumed to be insolvent and which transfer diminishes his estate by the payment of some antecedent debt.

The attack here by both parties asserts that these judgments, or some of them, became liens within that 90-day period, and that all other elements being present, the judgment liens are preferences which ought to be set aside.

In the case of William Charles Fair, the date of bankruptcy was July 9, 1982, and it appears that the judgments of Kichler, Grubbs and the two judgments of the Central Bank became liens on May 12, June 16, and July 2, respectively. All of these judicial liens became such within the 90-day period. The trustee is authorized to avoid those liens under Title 11, U.S.C. Section 547. If the debtor, William Charles Fair, has any right to claim exemptions, then he may claim it against any amounts in the trustee's hands after the avoidance of these judgment liens by trustee.

In the case of Claudette Fair, none of the judgment liens were obtained within the 90-day period prior to her bankruptcy on October 4, 1982.

### THE ATTACK UNDER 6–9–211 ALABAMA CODE

But the trustee and the debtors argue that the two judgments of the Central Bank and the judgment of Grubbs, while they did not occur within the 90-day period, did occur within a four-month period prior to the date of bankruptcy and that under the provisions of the Code of Alabama 1975, Section 6–9–211, such judgments never became liens on the property of the debtors.

Neither trustee nor the debtors can attack these judgment liens obtained within the four-month period, under Section 544 of Title 11, U.S.Code, for two reasons: first, the trustee or the debtors must exercise the rights under Section 544(b) of an unsecured creditor with an allowable claim. Second, such an unsecured creditor must have the right under the state law to avoid a transfer such as these judgment liens. There is no showing of an independent ground under the State law for an avoidance by an unsecured creditor of a judgment lien of record. No such ground is asserted in these proceedings. Certainly the language of Section 6–9–211 does not provide that any creditor can avoid a lien, simply because bankruptcy proceedings have been instituted.

Moreover, the trustee asserts no rights of an identified unsecured creditor in these proceedings. No attack can be brought under Section 544.

But trustee asserts in his motion, that under Section 6–9–211 of the Alabama Code, a lien never arose based upon the judgments of the Central Bank and Grubbs, since bankruptcy intervened within four months after the filing of the judgment.

Section 6–9–211 in pertinent part reads: Every judgment, a certificate of which has been filed as provided in Section 6–9–210 shall be a lien in the county where filed on all property of the defendant which is subject to levy and sale under execution, and such lien shall continue for ten years after the date of such judgment; ... No insolvency proceedings or declarations of insolvency shall affect or impair such lien, except bankruptcy proceedings instituted within four months after the filing of the certificate of judgment for record as provided by law. ...

Trustee asserts that the underlined language constitutes an exception to the provision of Section 6–9–211, that the judgment certificate recorded creates a lien.

We are unable to follow this reasoning. A careful study of those cases decided by the Alabama Courts, leads to the conclusion that it was not the intention of the legislature to create an exception to the creation of judicial liens by recordation.

The cases deal with the Bankruptcy Act of 1898, which in Section 67 (old 11 U.S.C. Section 107) provided that the trustee and the debtor had a right to avoid a judicial lien obtained within four months of bankruptcy, and while the debtor was insolvent or under circumstances where the debtor had committed fraud.

Those cases dealt with the effect of that bankruptcy provision upon debtor's rights to exemptions under the State law, and the efficacy of such a judgment lien, where the trustee or the debtor had not taken steps to avoid the lien in the Bankruptcy Court. The conclusion is that bankruptcy *vel non* does not destroy lien rights, particularly judgment lien rights, and that they subsist after bankruptcy. See *Rowe et al v. Bonneau-Jeter Hardware Co.*, 245 Ala. 326, 16 So.2d 689 (1944). And where the right is available to debtor to avoid such a judicial lien, his successor in title may insist on the same right. See *Bank of Huntsville v. Oellerich*, Ct. of Civ.App. of Ala.1981, 406 So.2d 983.

The underlined language quoted above from the Alabama Code, Section 6–9–211, was apparently an attempt by the legislature to track the provisions of Section 67(a) of the 1898 Act. It simply recognized that in a specific kind of insolvency proceeding, that is, bankruptcy, the lien created by the

recordation of a judgment within four months of the date of bankruptcy could be avoided.

This conclusion finds support in the *Rowe* case, cited above, which reads in part (245 Ala. at page 330, 16 So.2d 689):

> So that the effect of the bankruptcy proceedings depends upon whether under Alabama law there is a lien in favor of the creditor on the land involved created more than four months before the filing of the bankruptcy petition, since such a lien is not affected by the discharge in bankruptcy. The provisions of the Alabama law, Title 7, Section 585, Code of 1940, to the extent that a lien shall not be affected by bankruptcy filed more than four months after filing the certificate of the judgment, is apparently an interpretation by the legislature of the Federal law. It merely enacts provisions which declare a status resulting from the Federal act.

Our conclusion is that the underlined provisions of Section 6–9–211 do not create an avoidance power in creditors or any other persons simply because bankruptcy intervenes within four months after the recordation of a judgment. Nor does it create an exception to the rule that a recordation of the judgment shall constitute a lien. It is simply a recognition that a federal law may avoid such a lien if bankruptcy occurs within four months.

Trustee, then, cannot avoid the two judgments of the Central Bank and the judgment of Grubbs, recorded against property of Claudette Fair.

## CLAUDETTE FAIR'S HOMESTEAD

Claudette Fair, however, is entitled to have a determination that the judgment liens of the Central Bank and Grubbs, to the extent of her exemptable interest in this property, is not a valid lien against her interest in the property.

This is so for a reason other than those arguments made by trustee and Claudette Fair.

For the lien created by Section 6–9–211 of the Code of Alabama 1975, is not effective against the homestead interest of a debtor. *Barber v. Beckett,* Ala.1949, 251 Ala. 569, 39 So.2d 17, the Court first recognized the lien status of a judgment recorded, but went on to point out:

> But, as stated, to have the foregoing result, the property must be subject to levy and sale under execution, and in this connection the law looks with favor on the establishment of a homestead so when lands are purchased for a home, although a recorded judgment stands against the purchaser, the purchaser may proceed to occupy the land and make a home thereon, and when this is done in accordance with homestead requirement, the judgment lien does not attach. *W.T. Rawleigh Co. v. Patterson* [239 Ala. 309, 195 So. 729], *supra.*

See also, *Bank of Huntsville v. Oellerich,* cited *supra.*

Since the judgment liens of the Central Bank and Grubbs did not attach to this property as against Claudette Fair's exemptable homestead interest, then she is entitled to claim her interest free and clear of these two judgment liens in these proceedings.

As to the judgment lien of Kichler, filed on May 12, 1982, it is not avoidable by the trustee in the case of Claudette Fair, since it was recorded more than 90 days and more than four months before the filing of her bankruptcy. But the judgment lien of Kichler, as against Claudette Fair, to the extent of her exemptable interest in this property as a homestead, is subject to the same objection by her as were the judgment liens of the Central Bank and Grubbs. If the Kichler judgment encumbers her homestead rights, then the judgment lien never attaches to her homestead interest in that property. See *Barber v. Beckett,* cited *supra.*

An appropriate Order will enter.